## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :

JTH TAX, LLC. d/b/a LIBERTY TAX SERVICE,:
    1716 Corporate Landing Parkway        :
    Virginia Beach, Virginia 23454         :
                               :
                Plaintiff,     :
    v.                              :
                               :

DAVID LEGGAT,                    :
    Serve: 72990 Amber St.         :
         Palm Desert, CA 92260    :
                               :  Case No: 2:22-cv-41
                               :

And                            :       **PLAINTIFF'S VERIFIED**
                             :  **COMPLAINT FOR INJUNCTIVE**

DAVID LEGGAT d/b/a DHLTax Services  :     **RELIEF AND DAMAGES**
    Serve: 74290 Highway 111        :
         Palm Desert, CA 92651     :
                               :
                               :
                Defendants.    :
                               :
                               :
                               :
                               :
                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff JTH Tax, LLC d/b/a Liberty Tax Service ("Liberty" or "Plaintiff"), by counsel,

alleges for its Verified Complaint against Defendants David Leggat and David Leggat d/b/a DHL

Tax Services (collectively "Defendants"), and states as follows:

## INTRODUCTION

1.      Defendants are operating a competing tax preparation business under the name "DHL Tax Services" in an effort to circumvent and avoid the non-competition, post-termination, and non-solicitation provisions set forth in their Liberty Tax Service® Franchise Agreement with Liberty. Defendant David Leggat previously owned a Liberty Tax Service® Franchised Businesses located at 74290 Highway 111, Palm Desert, CA 92260 ("The Hwy 111 Location" o "Franchised Business"). On January 22, 2019, the Franchise Agreement expired.

2.      Defendants are using Liberty's trade secrets, customer lists, customer email addresses, and other confidential information to call upon and solicit Liberty's customers in the operation of Defendants' competing tax preparation business in violation of the Franchise Agreement and federal law. Liberty seeks (1) an immediate injunction preventing Defendants from continuing to violate the Defend Trade Secrets Act and/or the Virginia Uniform Trade Secrets Act by misappropriating Liberty's trade secrets, (2) an immediate injunction prohibiting Defendants from operating their competing business in violation of their non-competition and non-solicitation covenants, and (3) an immediate injunction requiring Defendants to comply with the post-termination obligations under the Franchise Agreement.

## PARTIES

3.      Liberty is a Delaware corporation with its principal place of business at 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454. Liberty and its affiliates maintain franchises and company-owned income tax preparation offices throughout the United States, including the State of California.

4.      Defendant David Leggat ("Leggat") is a citizen of the State of California, with a last known address of 72990 Amber St. Palm Desert, CA 92260.

5.     Defendant DHL Tax Services ("DHL Tax") is a tradename of a competing business that operates in the State of California, with a last known address of 74290 Highway 111, Palm Desert, CA 92260 ("The Hwy 111 Location").

## JURISDICTION AND VENUE

6.     This Court has personal jurisdiction over Leggat because he entered into a valid and enforceable franchise agreement for the ownership and/or operation of a Liberty franchise location (the "Franchise Agreement," attached hereto as **Exhibit A**). The Franchise Agreement contains a mandatory choice of law provision requiring that "Virginia law governs all claims that in any way relate to or arise out of any dispute whatsoever regarding the Agreements or any of the dealings of the parties hereto." Ex. A § 15(a). The Franchise Agreement also contains a mandatory forum selection clause requiring that any lawsuit regarding the Franchise Agreement or "any of the dealings of the parties hereto . . . shall be proper only in the . . . U.S. District Court in Norfolk, Virginia." Ex. A § 15(b).

7.     This Court has personal jurisdiction over DHL Tax because it is nothing more than a trade name for Leggat, who is a party to the Franchise Agreement, and Leggat consented to the venue and jurisdiction of this Court through the Franchise Agreement.

8.     This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1836.

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Liberty (Canada) and Defendants (California) and the amount in controversy exceeds the sum of $75,000, including the valuation of Liberty's equitable claims, which are measured by the value of the object of the litigation, exclusive of interest and costs.

10.     This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. §1367 because the claims form part of the same case or controversy that give rise to this Court's jurisdiction over the violation of the Defend Trade Secrets Act.

11.     This action is properly venued in the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1391(a)(1) and (2) because a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of Virginia, Norfolk Division.

## FACTUAL BACKGROUND

### Liberty

12.     Liberty is a franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including the State of California.

13.     Liberty owns the federally-registered Liberty Tax Service® trademarks (trademark serial number 76066158), service marks, logos and derivations thereof (the "Marks"), as well as the distinctive and well-known Liberty Tax Service® system, which sells income tax preparation and filing services and products to the public under the Marks.

14.     Liberty advertises and promotes the Marks throughout the United States, and has spent substantial time and money to maintain and improve its franchise system, including, *inter alia*: (1) maintaining and developing service and product quality; (2) developing uniform designs and markings for their services; (3) licensing trademarks and other proprietary information to, and (4) training franchisees.

15.     Liberty grants licenses to franchisees to use the Marks and participate in its confidential and proprietary business system pursuant to written franchise agreements, which are reasonably and carefully tailored to protect Liberty's valuable trade secrets, reputation, goodwill, and other legitimate business interests.

16. Liberty discloses certain confidential information, including methods of operation of franchise, customer information, and marketing information, to franchisees through its Operations Manual, training manuals, training programs, and in providing guidance and assistance to its franchisees pursuant to a franchise agreement. Liberty requires that its franchisees agree, that upon expiration, termination, or nonrenewal of a franchise agreement, they will never use, disclose, or permit the use or disclosure of Liberty's confidential information in any manner whatsoever. Liberty requires that upon termination, expiration, or nonrenewal of a franchise agreement, the former franchisee will stop using all literature and forms received by Liberty, deliver to Liberty all customer information, and deliver to Liberty all copies of its Operations Manual and any updates thereto.

17. As a result of these efforts and expenditures, the Marks have become associated in the minds of consumers with uniform goods and services of consistently high quality, provided only by persons following Liberty's approved sales, operating methods, and procedures.

18. Liberty has used the Marks, along with the efforts of its hardworking employees, to grow from five offices in 1998 to over 3,000 today.

19. Liberty has grown to be one of the largest tax preparation franchises in the U.S.A.

20. Liberty Tax plays an important role in the local Virginia Beach economy, as well as nation-wide, with a network of over 21,000 tax preparers.

21. January to April is Liberty's busiest time of year, during which time Liberty generates approximately 90% of its annual revenue.

**Obligations Under the Franchise Agreement**

22. On or about January 31, 2011, Leggat entered into the Franchise Agreement with Liberty. *See* Ex. A. The term of the Franchise Agreement was five years with specific terms for

renewal. *Id.* § 2(a), (b).

23.     Pursuant to the Franchise Agreement, Liberty provided Leggat with training in franchise operation, marketing, advertising, sales, and business systems. Leggat also received a copy of Liberty's confidential operating, marketing, and advertising materials, which are not available to the public or to anyone who is not part of Liberty's business system.

24.     Pursuant to Section 3 of the Franchise Agreement, Leggat and Liberty agreed that Leggat "may operate as many tax return preparation offices in the Territory as [they] determine[d] to be appropriate." *Id.* §3. The Franchise Agreement described the boundaries of the Territory, which it identified as "CA131". *Id.* Schedule A.

25.     Under the Franchise Agreement, Leggat operated a Liberty Tax Service® franchise at The Hwy 111 Location. The Franchised Business used the business phone number (760) 341-0930.

26.     In exchange for Liberty's grant of a franchise allowing them to "operate a tax return preparation business using Liberty's system and Liberty's Marks within the Territory," and specifically at The Hwy 111 Location, Leggat agreed to certain obligations while operating under the Franchise Agreement as well as post-termination.

27.     After the initial five-year term of the Franchise Agreement ran, Leggat continued to operate as a franchisee in 2016, 2017, and 2018. Each year he received a loaned copy of the Operations Manual and continued to prepare electronic tax returns as a Franchised Business of Liberty.

28.     On January 22, 2019, Liberty sent a letter to Leggat confirming that he would not operate as a Franchised Business in 2019 and reminding Leggat of his post-termination obligations not to compete or solicit with Liberty. *See* Non-Renewal Letter attached as **Exhibit B.**

**Obligations After Termination of Franchise Agreement**

29.     When Leggat entered into the Franchise Agreement with Liberty, they agreed to "operate the Franchised Business according to the then-current Operations Manual." <u>Ex. A</u> §6(m).

30.     For each year, from at least 2013 through 2018, Liberty loaned or provided to Leggat a temporary copy of the Operations Manual for the applicable year.

31.     The Operations Manual for each year contained provisions that incorporated the contents of the Operations Manual into the Franchise agreement. *See e.g.*, 2013 Operations Manual at Introduction 2013-3. **Exhibit C.**

32.     The Operation Manuals, as part of the Franchise Agreement, further contained a requirement that Leggat keep internal communications from Liberty, including the Operations Manuals themselves, confidential. <u>Ex. C.</u> at Policies and Procedure 2013-7.

33.     Although the location of the confidentiality provisions sometimes changed from one year's Operation Manual to the next, all of the Operations Manuals loaned to Leggat contained identical or substantially similar provisions.

34.     Pursuant to Section 9 of the Franchise Agreement, Leggat agreed to certain post-termination obligations, which include, *inter alia*, the obligation to:

A.      Never hold themselves out as a former Liberty franchisee, <u>Ex. A</u> § 9(b);

B.      Pay to Liberty all amounts owing to Liberty, *id.* § 9(d);

C.      Transfer to Liberty all telephone numbers, listings, and advertisements used in relation to the Franchised Business, *id.* § 9(e);

D.      Deliver to Liberty all original and all copies of documents containing the contact information of customers who patronized the Franchised Business, *id.* § 9(f);

E.      Deliver to Liberty all original and copies of customer tax returns, files, and records, *id.* § 9(g);

F.      Deliver to Liberty the copy of the Operations Manual and any updates, *id.*

§ 9(h);

G.    Adhere to the provisions of the post-term covenants, including the covenants not to compete and not to solicit, *id.* § 9(j).

35.    Pursuant to Section 10(b) of the Franchise Agreement, Leggat agreed to a post-termination covenant not to compete ("Non-Compete") "[f]or a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business . . . you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns . . . within the Territory or within a twenty-five miles of the boundaries of the Territory."

36.    Pursuant to Section 10(d) of the Franchise Agreement, Leggat agreed to a post-termination covenant not to solicit ("Non-Solicit") "for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business…you will not within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly, solicit the patronage of any person or entity served by any of your prior Liberty offices in the last twelve (12) months that you were a Liberty franchisee…for the purpose of offering such person or entity for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products."

37.    The Non-Compete and Non-Solicit covenants contained in Section 10 of the Franchise Agreement are necessary to protect Liberty's legitimate and protectable interest in its franchise business, including but not limited to:

A.    Maintaining and protecting Liberty's goodwill and customer loyalty;

B.    Retaining customer relationships;

C.    Liberty's customer lists, customer identification, tax returns, and other confidential and trade secret information; and

D.    Preserving Liberty's ability to facilitate the operation of Liberty franchises where the Franchise Location is currently located.

38. Pursuant to Section 10(h) of the Franchise Agreement, Leggat agreed "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest." To that end, Leggat agreed to "waive all defenses to the strict enforcement of Section 10," and further agreed that "Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10." Leggat further agreed that Liberty would not be required to post any bond prior to seeking or receiving any order for injunctive relief.

39. Pursuant to Section 15(a) of each of the Franchise Agreement, Leggat agreed and acknowledged that Virginia law governs "all claims that in any way relate to or arise out of" the Franchise Agreement and/or the dealings between the parties to the Franchise Agreement.

40. Pursuant to Section 15(b) of the Franchise Agreement, Leggat consented to venue and personal jurisdiction in the U.S. District Court for the Eastern District of Virginia, Norfolk Division.

**Breach of the Franchise Agreement**

41. Leggat elected not to exercise their option to renew the Franchise Agreement, which therefore expired on January 22, 2019. *See* Ex. B. Prior to the expiration date, Leggat, planned to create or created a competing tax preparation business, DHL Tax, which would operate out of the same location as the former Franchise Location.

42. In addition to using the same physical location, DHL Tax uses the same phone number as the former Franchised Business; uses Liberty's trade secrets, including, but not limited to, business know-how and customer lists; and uses the good will acquired from Liberty's Mark as well as developed by the former Franchised Business to compete directly with Liberty and solicit Liberty's customers in breach of Leggat's post-termination restrictive covenants.

43. In July 2021, Liberty conducted a routine audit of the Electronic Filing Identification Numbers (EFINs) used by former franchisees subject to the post-termination covenants not compete or solicit.

44. Liberty's audit revealed that Leggat prepared or submitted, or directed another person or persons to prepare or submit, tax returns using the EFIN number associated with Leggat In 2019, 2020, and 2021—years Leggat was still subject to the covenants not to compete or solicit.

45. Upon information and belief, as of October 2021, Leggat used the EFIN to electronically submit or have someone else submit approximately 1,081 prepared returns.

46. Upon information and belief, as of October 2021, Leggat owes Liberty $41,489 in unpaid Royalties and Advertising Fees defined in § 4(d)-(e) in connection with the tax returns prepared and electronically submitted in violation

47. Leggat failed to deliver to Liberty all customer contact information.

48. Leggat failed to deliver to Liberty all customer files, including, but not limited all original and copies of customer tax returns and records.

49. Leggat failed to transfer to Liberty the telephone number associated with the former Franchised Business. In order to compete with Liberty, trade on Liberty's good will, and solicit Liberty's customers, Leggat continues to use the telephone number of the former Franchised Business as reflected in DHL Tax's Yelp page.

50. Leggat failed to transfer to Liberty the Yelp advertisement page associated with the former Franchised Business. In order to compete with Liberty, trade on Liberty's good will, and solicit Liberty's customers, Leggat linked DHL Tax's Yelp business page to the former Franchised Business rather than create a new Yelp business page.

51.     Leggat established DHL Tax within two years of the expiration of the Franchise Agreement and operated it to offer and provide tax preparation services from The Hwy 111 Location using the telephone number associated with the former Franchised Business.

52.     Leggat has prepared, is preparing, and will continue to prepare tax returns for Liberty customers for whom Leggat prepared tax returns while operating their former Franchise Location, despite the termination of the Franchise Agreement.

53.     According to customer reviews posted on DHL Tax's Yelp page at least six (6) customers represent that Leggat has been doing their taxes for years.

54.     Some of the Yelp Reviews state that the location used to be a Liberty franchise and appear to be posted within two years of Leggat's non-renewal.

55.     Leggat used, divulged, and/or communicated Liberty's trade secrets and confidential information to establish and operate DHL Tax without the consent of Liberty.

56.     Leggat has failed to return one or more loaned copies the Operations Manual to Liberty upon expiration of the Franchise Agreement.

<u>**COUNT I**</u>
*Breach of Franchise Agreement against Leggat*
*(Equitable Claim)*

57.     Liberty incorporates herein by reference the preceding Paragraphs as if set forth herein verbatim.

58.     The Franchise Agreement is valid and enforceable.

59.     Liberty has performed every obligation and condition required of it under the Franchise Agreement.

60.     Leggat is personally and individually liable for all obligations in the Franchise Agreement, including post-termination obligations and covenants.

61.     The Franchise Agreement expired on January 22, 2019.

62.     Leggat agreed to the post-termination obligations set forth in Section 9 of the Franchise Agreement.

63.     Leggat committed the following acts and omissions following the expiration of the Franchise Agreement in violation of Section 9 of the Franchise Agreement:

A.      Holding themselves and/or their new business DHL Tax out to be a former Liberty franchisee on DHL Tax's Yelp;

B.      Failing to transfer to Liberty the telephone number and Yelp advertisement listing used by the Franchised Business upon expiration of the Franchise Agreement;

C.      Failing to provide to Liberty the original and all copies of files and records, including customer lists, related to the operation of the Franchised Business upon expiration of the Franchise Agreement;

D.      Failing to return Liberty's confidential operations manual;

E.      Preparing and electronically filing income tax returns and providing Financial Products from the former Franchise Location, which is within the Territory, during the two-year period following the expiration of the Franchise Agreement; and

F.      Soliciting the patronage of persons and entities that were served by the former Franchised Business for the purpose of offering such person or entity income tax preparation, electronic filing of tax returns, or Financial Products during the two-year period following the expiration of the Franchise Agreement.

64.     Leggat agreed to the post-termination Non-Compete and Non-Solicit covenants set forth in Section 10 of the Franchise Agreement.

65.     Leggat committed the following acts and omissions following the expiration of the Franchise Agreement in violation of Section 10 of the Franchise Agreement:

A.      Preparing and electronically filing income tax returns and providing Financial Products from the Franchise Location, which is within the Territory, during the two-year period following the expiration of the Franchise Agreement; and

B. Soliciting the patronage of persons and entities that were served by the Franchised Business for the purpose of offering such person or entity income tax preparation, electronic filing of tax returns, or Financial Products during the two-year period following the expiration of the Franchise Agreement.

66. Leggat agreed not to disclose or use Liberty's Confidential Information each year he received an Operations Manual (which is incorporated into the Franchise Agreement by reference) and operated as a Franchised Business

67. Leggat committed the following acts and omissions following the expiration of the Franchise Agreement in violation of the Franchise Agreement:

A. Disclosing Liberty's Confidential Information, including methods of operations, customer information, and marketing information, to other persons and entities, including DHL Tax, without the consent or authorization of Liberty.

B. Using Liberty's Confidential Information for purposes other than the operation of the Franchised Business, including for the purpose of operating DHL Tax and soliciting Liberty's customers.

68. Each and every one of the breaches set forth in Paragraphs 63, 65, and 67 constitutes a material breach of the Franchise Agreement.

69. As a direct and proximate result of these breaches, Liberty has incurred, and will continue to incur substantial losses, fees, and expenses for which Leggat is liable.

70. As a result of Leggat's past, present, and potential breaches, Liberty has suffered and will continue to suffer actual, substantial, and irreparable damage, including, but not limited to:

A. Loss of customer goodwill and loyalty;

B. Loss of business opportunities and relationships to provide tax preparation services and related services;

C. Loss of customers;

D. Loss of profits;

13

E.    Loss of franchisee stability;

F.    Loss of ability to sell other franchises;

G.    Loss of value in confidential business information;

H.    Loss of competitive advantage in the San Clemente, California area and CA131 Territory;

I.    Attorneys' fees; and

J.    Cost of this action.

71.    Liberty has been and will be irreparably harmed by Leggat's actions, and monetary damages are an insufficient remedy in that they can only potentially quantify a limited loss of customers, but cannot take into account the continuing irreparable damage to the value of Liberty's trade secrets and confidential information, goodwill, customer loyalty, and its ability to sell franchises, all of which are caused by Leggat's ongoing violations.

72.    Upon information and belief, Leggat will continue to breach the Franchise Agreement by failing to transfer the telephone number and advertisement of the former Franchised Business and failing to deliver to Liberty all original and copies of Liberty's confidential information and customer information and records.

73.    Upon information and belief, Leggat will continue to breach post-termination obligations of refraining from holding themselves out to be a former Liberty franchisee; continuing to use the telephone number of the former Franchised Business; continuing to disclose and use Liberty's confidential information and trade secrets, including, but not limited to business know-how and customer lists; and continuing to breach the Non-Compete and Non-Solicit covenants unless their wrongful conduct is enjoined.

**<u>COUNT II</u>**
***Breach of Franchise Agreement Sections 9(j), 10(b), (d) Against Leggat***
***(Monetary Claim)***

74.     Liberty incorporates all previous paragraphs as though fully set forth herein verbatim.

75.     Leggat agreed to the post-termination obligation set forth in Section 9(j) of the Franchise Agreement that they would adhere to the provisions of the Non-Compete and Non-Solicit covenants.

76.     Leggat agreed to the Non-Compete covenant set forth in Section 10(b) of the Franchise Agreement that, "[f]or a period of two (2) years following the…expiration…of the Franchised Business…you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the Territory."

77.     Leggat agreed to the Non-Solicit covenant set forth in Section 10(d) of the Franchise Agreement that, "for a period of two (2) years following the…expiration…of the Franchised Business…you will not within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly, solicit the patronage of any person or entity served by any of your prior Liberty offices in the last twelve (12) months that you were a Liberty franchisee…for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products."

78.     Within the two years following the expiration of the Franchise Agreement, Leggat misappropriated customer information obtained while operating the former Franchised Business, used a business advertisement website that demonstrated and garnered good will while the franchisees operated under the Liberty Marks, used the telephone number and address used by the former Franchise Business, and represented that they have experience as a national franchisee and

specifically as a former Liberty franchisee in order to unlawfully solicit Liberty's clients and potential clients and unlawfully compete with Liberty via their new business DHL Tax.

79.     Leggat has and will continue to intentionally represent himself and DHL Tax to the public as a former Liberty franchisee in order to legitimize their new business based on the reputation and goodwill of Liberty and their former Franchised Business and for the purpose of competing with Liberty. Defendants have made such representations through DHL Tax's Yelp page.

80.     Leggat has and will continue to use the address and telephone number of the former Franchised Business, which they failed to transfer to Liberty in violation of Section 9(e) of the Franchise Agreement, to legitimize DHL Tax as the successor business of the former Franchised Business in order to solicit Liberty's customers and compete with Liberty. Defendants have advertised their telephone number and address through DHL Tax's Yelp page.

81.     Leggat has and will continue to solicit Liberty's clients using the confidential client contact information and records that Leggat failed to deliver to Liberty in violation of Section 9(g) and (h) of the Franchise Agreement and using the Yelp advertisement linking back to the Liberty Yelp page that Leggat failed to transfer to Liberty in violation of Section 9(e) of the Franchise Agreement.

82.     As a direct and proximate result of Leggat's breaches of Sections 9(j), 10(b), and 10(d) of the Franchise Agreement, Liberty has suffered and will continue to suffer damages in an amount to be proven at trial, for which Leggat is liable, including, but not limited to, compensatory damages, consequential damages, and disgorgement of Leggat's profits.

83.     Leggat intentionally and maliciously planned to violate the Non-Compete and Non-Solicit covenants by creating a new business entity (DHL Tax) for the purposes of providing tax

preparation services prior to allowing the Franchise Agreement to expire; failing to transfer to Liberty the telephone number and Yelp advertisement of the former Franchised Business in violation of the Franchise Agreement in order to legitimize DHL Tax's business; failing to deliver to Liberty all original and copies of customer information and records in violation of the Franchise Agreement in order to wrongfully solicit Liberty's customers and wrongfully compete with Liberty within two years of allowing the Franchise Agreement to expire; and representing to customers and potential customers that Leggat and DHL Tax were former Liberty franchisees in order to legitimize DHL Tax's business and solicit Liberty's customers and compete with Liberty in violation of the Franchise Agreement post-termination covenants.

84.     Because Leggat intentionally and maliciously violated the Non-Compete and Non-Solicit covenants of the Franchise Agreement, Liberty is entitled to punitive damages.

## COUNT III
### *Conversion against Leggat and DHL Tax*

85.     Liberty incorporates all previous paragraphs as though fully set forth herein verbatim.

86.     Liberty owns and has the right to possess the following property by virtue of the Franchise Agreement:

> A.    The telephone number of the former Franchised Business;
>
> B.    Any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers who patronized the Franchised Business;
>
> C.    Any original and all copies, including electronic copies and media, containing customer tax returns, files, and records; and
>
> D.    The copy of the Operations Manual and any updates.

87.     Leggat was authorized to use and possess the property while operating the former Franchised Business under the Franchise Agreement.

88.     Pursuant to Section 9 of the Franchise Agreement, upon expiration of the Franchise Agreement, Leggat was required to transfer and deliver all of the aforementioned property to Liberty.

89.     Since January 23, 2019, the day after the expiration of the Franchise Agreement, Defendants have retained Liberty's property without authority, thereby intentionally interfering with Liberty's use and enjoyment of its property.

90.     Defendants have converted Liberty's property for their financial gain through the solicitation of Liberty's customers and in order to directly compete with Liberty for tax preparation services.

91.     Defendants' interference with Liberty's property by virtue of not transferring or delivering it to Liberty has deprived Liberty of its possession and use of the aforementioned property.

92.     As a direct and proximate result of Defendants' conversion of Liberty's property, Liberty has suffered damages and will continue to suffer damages until the aforementioned property is delivered and returned to Liberty.

## COUNT IV
### *Violation of Defend Trade Secrets Act against Leggat and DHL Tax*

93.     Liberty incorporates all previous paragraphs as though fully set forth herein verbatim.

94.     The Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, provides a private civil action for the misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

95.     Liberty owns numerous trade secrets, including but not limited to, its Operations Manual, training manuals, training programs, marketing strategies, marketing programs, and customer lists. Each of Liberty's trade secrets derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information. Liberty's trade secrets are not readily ascertainable by the public as they are disclosed only to franchisees in the operation of a franchised business pursuant to a franchise agreement.

96.     During the operation of the Franchised Business, Liberty's trade secrets were disclosed to Leggat for the sole purpose of operating the Franchised Business pursuant to the Franchise Agreement.

97.     Liberty has taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining its competitive advantage in the marketplace. The Franchise Agreement explicitly provides for the protection of such trade secrets, including requiring the delivery of all originals and copies of such information to Liberty upon expiration, termination, or nonrenewal of the Franchise Agreement, requiring former franchisees and their representatives to maintain the confidentiality of the information, and requiring former franchisees and their representatives to never use the information for any purpose other than operating a Franchised Business pursuant to the Franchise Agreement.

98.     Liberty required and Leggat agreed that upon expiration, termination, or nonrenewal of the Franchise Agreement, they would never use, disclose, or permit the use or disclosure of Liberty's trade secrets in any manner whatsoever.

99.     Liberty required that upon termination, expiration, or nonrenewal of the Franchise Agreement, Leggat would stop using all literature and forms received by Liberty, deliver to Liberty

all customer information, and deliver to Liberty all copies of its Operations Manual and any updates thereto. Upon information and belief, some of the tax preparation services Leggat provided were to business entities outside of the State of California, including to a business in the State of Colorado.

100.    Prior to January 2019, Leggat began a business called DHL Tax, which performs tax preparation services at the former Franchise Location to customers Leggat previously served while they were franchisees.

101.    Without authority or consent from Liberty, Leggat and DHL Tax used the business know-how, customer lists, and customer contact information that Leggat obtained while operating the former Franchised Business to obtain business for themselves and/or DHL Tax after the expiration of the Franchise Agreement, thereby misappropriating Liberty's trade secrets.

102.    Upon information and belief, Leggat and DHL Tax are utilizing Liberty's confidential system and materials after the expiration of the Franchise Agreement and Liberty has not and would not consent to or authorize such use.

103.    Leggat intentionally and without Liberty's permission or authorization misappropriated and/or disclosed Liberty's trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure Liberty by, for example, causing Liberty to lose any customers successfully solicited by Defendants.

104.    As a direct and proximate result of Leggat's willful, improper, and unlawful disclosure, and Leggat and DHL Tax's willful, improper, and unlawful use of Liberty's trade secrets, Liberty has suffered and will continue to suffer irreparable injury.  Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Liberty's trade secrets should be enjoined from further disclosure or use of Liberty's trade secrets.

105. Pursuant to 18 U.S.C. 1836(b)(3)(B), Liberty is entitled to recover damages for its actual losses; and/or is entitled to recover for the unjust enrichment caused by Leggat and DHL Tax's misappropriation of Liberty's trade secrets in an amount to be proven at trial.

106. Leggat and DHL Tax's conduct in misappropriating Liberty's trade secrets was and continues to be willful and malicious - warranting an award of exemplary damages in accordance with 18 U.S.C. § 1836(b)(3)(C); and an award of reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

## COUNT V
### *Violation of Virginia Uniform Trade Secrets Act against Leggat and DHL Tax*

107. Liberty incorporates all previous Paragraphs as though fully set forth herein verbatim.

108. Liberty owns numerous trade secrets, including but not limited to, its Operations Manual, training manuals, training programs, marketing strategies, marketing programs, and customer lists. Each of Liberty's trade secrets derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information. Liberty's trade secrets are not readily ascertainable by the public as they are disclosed only to franchisees in the operation of a franchised business pursuant to a franchise agreement.

109. During the operation of the Franchised Business, Liberty's trade secrets were disclosed to Leggat for the sole purpose of operating the Franchised Business pursuant to the Franchise Agreement.

110. Liberty has taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining its competitive advantage in the marketplace. The Franchise Agreement explicitly provides for the protection of such trade secrets, including requiring the delivery of all

originals and copies of such information to Liberty upon expiration, termination, or nonrenewal of the Franchise Agreement, requiring former franchisees and their representatives to maintain the confidentiality of the information, and requiring former franchisees and their representatives to never use the information for any purpose other than operating a Franchised Business pursuant to the Franchise Agreement.

111. Liberty required and Leggat agreed that upon expiration, termination, or nonrenewal of the Franchise Agreement, they would never use, disclose, or permit the use or disclosure of Liberty's trade secrets in any manner whatsoever.

112. Liberty required that upon termination, expiration, or nonrenewal of the Franchise Agreement, Leggat would stop using all literature and forms received by Liberty, deliver to Liberty all customer information, and deliver to Liberty all copies of its Operations Manual and any updates thereto.

113. Prior to January 2019, Leggat began a business called DHL Tax, which performs tax preparation services at the former Franchise Location to customers Leggat previously served while they were franchisees.

114. Without authority or consent from Liberty, Leggat disclosed to DHL Tax and Leggat and DHL Tax used Liberty's business know-how, customer lists, and customer contact information in order to obtain business for themselves after the expiration of the Franchise Agreement, thereby misappropriating Liberty's trade secrets.

115. Upon information and belief, Leggat and DHL Tax are utilizing Liberty's confidential system and materials after the expiration of the Franchise Agreement and Liberty has not and would not consent to or authorize such use.

116. Leggat intentionally and without Liberty's permission or authorization

misappropriated and/or disclosed Liberty's trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure Liberty by, for example, causing Liberty to lose any customers successfully solicited by Defendants.

117. As a direct and proximate result of Leggat's willful, improper, and unlawful disclosure and Leggat and DHL Tax's willful, improper, and unlawful use of Liberty's trade secrets, Liberty has suffered and will continue to suffer irreparable injury. Pursuant to Va. Code § 59.1-337, Defendants' actual and threatened use and misappropriation of Liberty's trade secrets should be enjoined from further disclosure and use of Liberty's trade secrets.

118. Pursuant to Va. Code § 59.1-338(A), Liberty is entitled to recover damages for its actual losses; and/or is entitled to recover the unjust enrichment caused by Leggat and DHL Tax's misappropriation of Liberty's trade secrets in an amount to be proven at trial.

119. Leggat and DHL Tax's conduct in misappropriating Liberty's trade secrets was and continues to be willful and malicious - warranting an award of punitive damages in accordance with Va. Code § 59.1-338(B); and an award of reasonable attorneys' fees in accordance with Va. Code § 59.1-338.1.

## COUNT VI
### *Tortious Interference with Contract against DHL Tax*

120. Liberty incorporates all previous Paragraphs as though fully set forth herein verbatim.

121. The Franchise Agreement is valid and enforceable.

122. DHL Tax, by and through Leggat, knew of the existence of the Franchise Agreement.

123. DHL Tax engaged in the intentional and improper conduct described herein, which induced Leggat to breach various provisions of the Franchise Agreement, including, but not limited to the following:

A. Holding themselves and/or their new business DHL Tax out to be a former Liberty franchisee on, Yelp;

B. Failing to transfer to Liberty the telephone number and Yelp advertisement listing used by the Franchised Business upon expiration of the Franchise Agreement;

C. Preparing and electronically filing income tax returns and providing Financial Products from the Franchise Location, which is within the Territory, during the two-year period following the expiration of the Franchise Agreement; and

D. Soliciting the patronage of persons and entities that were served by the Franchised Business for the purpose of offering such person or entity income tax preparation, electronic filing of tax returns, or Financial Products during the two-year period following the expiration of the Franchise Agreement.

E. Disclosing Liberty's Confidential Information, including methods of operations, customer information, and marketing information, to other persons and entities, including DHL Tax, without the consent or authorization of Liberty.

F. Using Liberty's Confidential Information for purposes other than the operation of the Franchised Business, including for the purpose of operating DHL Tax and soliciting Liberty's customers.

124. As a result of DHL Tax's tortious conduct, Leggat breached the Franchise Agreement with Liberty.

125. DHL Tax's tortious interference has caused Liberty to suffer irreparable injury and Liberty will continue to suffer irreparable injury unless DHL Tax is enjoined from further tortious interference with Leggat's compliance with the terms of the Franchise Agreement.

126. As a direct and proximate result of DHL Tax's tortious interference, Liberty has suffered and will continue to suffer damages in an amount to be proven at trial, including, but not

limited to, compensatory damages, consequential damages, and disgorgement of DHL Tax's profits.

127.    DHL Tax intentionally and maliciously caused Leggat to violate the non-competition and non-solicitation covenants by creating a new business entity (DHL Tax) for the purposes of providing tax preparation services more than three months prior to allowing the Franchise Agreement to expire; failing to transfer to Liberty the telephone number and Yelp advertisement of the former Franchised Business in violation of the Franchise Agreement in order to legitimize DHL Tax's business; failing to deliver to Liberty all original and copies of customer information and records in violation of the Franchise Agreement in order to wrongfully solicit Liberty's customers and wrongfully compete with Liberty within two years of allowing the Franchise Agreement to expire; and representing to customers and potential customers that Leggat and DHL Tax were former Liberty franchisees in order to legitimize its business and solicit Liberty's customers and compete with Liberty in violation of the Franchise Agreement post-termination covenants.

128.    Because DHL Tax intentionally and maliciously interfered with Leggat's compliance with the Franchise Agreement, Liberty is entitled to punitive damages.

## <u>COUNT VII</u>
### *Request for Preliminary Injunction against Leggat and DHL Tax*

129.    Liberty incorporates herein by reference the preceding Paragraphs as if set forth herein verbatim.

130.    Liberty's application for injunctive relief is authorized by Fed. R. Civ. P. 65.

131.    Pursuant to Section 10(h) of the Franchise Agreement, Leggat acknowledged and agreed that "Liberty is entitled to a . . . temporary and/or permanent injunction" for breach of any of the post-termination obligations of the Franchise Agreement.

132. By holding themselves out to be a former Liberty franchisee; providing tax preparation services to former franchisee customers out of the Franchise Location, using the same telephone number as the Franchised Business; disclosing and using Liberty's confidential information; and misappropriating Liberty's trade secrets, Leggat and DHL Tax are engaging and will continue to engage in tax preparation services that are in clear violation of the express terms of the Franchise Agreement.

133. As a result of Leggat and DHL Tax's unauthorized and unlawful acts, Liberty has been irreparably harmed and will continue to suffer irreparable harm.

134. For the foregoing reasons, Liberty respectfully requests that the Court grant the following injunctive relief:

A. Enjoin Leggat and DHL Tax from continuing to operate a tax preparation business out of the Franchise Location;

B. Enjoin Leggat and DHL Tax from using the telephone number and Yelp page of the former Franchised Business.

C. Enjoin Leggat from preparing or electronically filing income tax returns and offering Financial Products within the Territory or within twenty-five miles of the Territory set forth in the Franchise Agreement;

D. Enjoin Leggat and DHL Tax from providing tax preparation services to any customers served by the former Franchised Business;

E. Enjoin Leggat and DHL Tax from referring to themselves as a former Liberty franchisee or former franchisee of a national tax preparation service; and

F. Enjoin Leggat and DHL Tax from using any confidential information from manuals or system provided by Liberty.

135. Liberty has a high likelihood of success on the merits on their claims, and it is probable that it will recover from Defendants, as Leggat is openly and actively, materially breaching the express terms of the valid and enforceable Franchise Agreement and as DHL Tax is

openly and actively, tortiously interfering with Leggat's compliance with the Franchise Agreement and is in possession of and using Liberty's trade secrets.

136.    Irreparable harm will result if a preliminary injunction is not issued because Leggat continues to materially breach the express terms of the valid enforceable Franchise Agreement, which will cause irreparable and irreversible harm to the goodwill and reputation that Liberty has spent significant time and money establishing.

137.    Liberty has no adequate remedy at law because each Defendant refuses to cease their material breaches of express terms in the Franchise Agreement and other tortious conduct.

138.    Leggat waived any requirement that Liberty post bond in Section 10(h) of the Franchise Agreement.

139.    The injury to Liberty outweighs any injury that would be sustained by Defendants collectively, and each of them, as a result of the requested injunctive relief.

140.    Injunctive relief will not adversely affect the public interest.

141.    Defendants have been or are being served with notice of this application for injunctive relief.

## COUNT VIII
### *Request for Permanent Injunction against Leggat and DHL Tax*

142.    Liberty incorporates herein by reference the preceding Paragraphs as if set forth herein verbatim.

143.    After a trial on the merits or a final judgment, Liberty asks the Court to convert any preliminary injunction as specified above into a permanent injunction.

144.    Liberty has joined all indispensable parties pursuant to Fed. R. Civ. 19.

## PRAYER FOR RELIEF

WHEREFORE, Liberty prays for judgment against Defendants as follows:

1. For the following injunctive relief:

    A. Enjoin Defendants from continuing to operate a tax preparation business out of the Franchise Location;

    B. Enjoin Defendants from using the telephone number of the former Franchised Business.

    C. Enjoin Leggat from preparing or electronically filing income tax returns and offering Financial Products within the Territory or within twenty-five miles of the Territory set forth in the Franchise Agreement;

    D. Enjoin Leggat from providing tax preparation services to any customers served by the former Franchised Business;

    E. Enjoin Leggat from referring to themselves as a former Liberty franchisee or former franchisee of a national tax preparation service;

    F. Enjoin Defendants from using any confidential information from manuals or system provided by Liberty;

    G. Order Defendants to take down the DHL Tax Yelp page;

    H. Order Defendants to remove any reference to being a former franchisee of Liberty and any links to Liberty or the former franchisee;

    I. Order Leggat to return to Liberty, at their own expense, all printed materials provided by Liberty to Leggat, including, without limitation, all manuals, customer lists, advertising material, stationery and printed forms and all other matters relating to the operation of the Franchise and/or bearing the Marks;

    J. Order Leggat to deliver to Liberty, at their own expense, any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers who patronized the Franchised Business, and any original and all copies, including electronic copies and media, containing customer tax returns, files, and records; and

    K. Order Leggat to transfer the telephone number for the former Franchised Business to Liberty.

2. That Liberty not be required to post any bond prior to the Court entering its injunction

3. For a monetary award against Defendants in excess of $75,000 to be proven at trial, including, but not limited to, compensatory damages, expectancy damages, punitive damages, and

disgorgement of profits;

4. For a monetary award against Defendants for Liberty's attorneys' fees and costs, in an amount to be proven at trial;

5. For pre- and post-judgment interest; and

6. For such other relief as the Court deems just and appropriate.

Dated: January 28, 2022                    Respectfully submitted,


**GORDON REES SCULLY MANSUKHANI, LLP**

By:  /s/ Patrick K. Burns           
Allison J. Becker (VSB #81993)
Patrick K. Burns, Esq. (VSB #80188)
421 Fayetteville Street, Suite 330
Raleigh, NC 27601
abecker@grsm.com
pburns@grsm.com
*Attorneys for JTH Tax, LLC. d/b/a Liberty Tax Service*

DocuSign Envelope ID: 5122CDBB-0F37-472C-852C-33815E317319

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                   :

JTH TAX, LLC. d/b/a LIBERTY TAX SERVICE,:
   1716 Corporate Landing Parkway      :
   Virginia Beach, Virginia 23454        :
                   :
             Plaintiff,     :
    v.                  :
                   :

DAVID LEGGAT,               :
   Serve: 72990 Amber St.        :
      Palm Desert, CA 92260     :
                   :   Case No:
                   :

And                  :           **VERIFICATION**
                   :

DAVID LEGGAT d/b/a DHLTax Services   :
   Serve: 74290 Highway 111     :
      Palm Desert, CA 92651     :
                   :
                   :
           Defendants.    :
                   :
                   :
                   :
                   :
                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**STATE OF ARIZONA**

**CITY OF SCOTTSDALE**

     I, Geoff Knapp, verify upon penalty of perjury that the following is true and correct:

     I am a Regional Director for JTH TAX LLC d/b/a LIBERTY TAX SERVICE ("Liberty"),

I have read the foregoing Verified Complaint and know the contents thereof and state the

1

allegations are true. I base this verification on my knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true. The grounds of my knowledge, information, and belief are derived from my position as regional director at Liberty, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty's records and conversations with Liberty's employees.

DocuSigned by:

*Geoff Knapp*

BABABAC50B57469...

Geoff Knapp